1

2

3

4

5

6

UNITED STATES DISTRICT COURT FOR THE
WESTERN OF WASHINGTON
AT TACOMA

7

8

JOSEPH N. D'AMICO, an individual;
FORT DISCOVERY CORP, a Washington
corporation,

No. 3:20-cv-05253-RJB

9

10

                              Plaintiffs,

LEGISLATORS BROTHERTON,
DEAN, KLER, AND SULLIVAN'S
MOTION FOR SUMMARY
JUDGMENT

11

     v.

12

13

JEFFERSON COUNTY, a Washington
county; DAVID STANKO; ROBERT
GEBO; KATHLEEN KLER; DAVID
SULLIVAN; KATE DEAN; and GREG
BROTHERTON,

NOTE OF MOTION CALENDAR:

JUNE 26, 2020

14

15

                              Defendants.

16

17

## I.    INTRODUCTION

18

19

        This is a straightforward legislative immunity motion. Local legislators are entitled

20

to absolute immunity under Section 1983 for their legislative activities. *Bogan v. Scott-*

21

*Harris*, 523 U.S. 44, 49, 118 S. Ct. 966, 970, 140 L. Ed. 2d 79 (1998).  Absolute immunity

22

applies to County commissioners. *Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir. 2002).

23

Here, the Jefferson County Board of Commissioners (the Commissioners) passed local

24

ordinances with uniform regulations throughout unincorporated Jefferson County on

25

commercial shooting facilities, after public notice, public comment and an open public

26

hearing. Those were core legislative activities.  The narrow exceptions that would expose

27

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

local legislators to personal liability under Section 1983 do not apply.  The purpose of legislative immunity is to ensure that the legislative function may be performed independently without fear of outside interference.  *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 731, 100 S. Ct. 1967, 1974, 64 L. Ed. 2d 641 (1980).  This court should grant the Commissioners summary judgment and dismiss them with prejudice.

Plaintiffs allege that the ordinances at issue in their amended complaint violated their 2nd Amendment rights. Dkt #17, pp. 17-18.  Plaintiffs also allege that passing the ordinances violated their equal protection and due process rights. *Id.* pp. 19-20.  Plaintiffs are wrong.  But dismissing those claims are not part of this motion.  Defendants will address these claims later on substance.  While other claims exist in this lawsuit against Jefferson County (County) and its sheriff's office that lack merit, the Commissioners who acted as legislators do not belong.

## II. FACTS

Plaintiffs sue three current county commissioners and one former one. ECF #17 (First Amended Complaint), pp. 4-5. Plaintiffs allege that the Commissioners passed "ordinances preventing Plaintiffs' new gun range." *Id.* pp. 11-12.  Plaintiffs specifically complain about Ordinance 05-1218-17 (*Id.*, p. 11), which imposed a moratorium for one year on the "submission, acceptance, processing or approval of any Jefferson County permit applications for any proposed use, development, proposal or project for the siting, construction or modification of any commercial shooting facility, during the period of development of an ordinance for the permitting, development and operation of commercial shooting facilities …" *Declaration of Cooley, Exh. O (Ordinance No. 05-1218-17).*

Plaintiffs wrongly claim, "The County extended the Moratorium every time it was about to expire."  ECF #17 (First Amended Complaint), p. 11.  But the moratorium in Ordinance No. 05-1218-17 expired after one year of its own terms.  Exh. O, p. 3 (Ordinance No. 05-1218-17).  This was ***after*** the Commissioners passed county-wide commercial shooting

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 2
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
V4

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

facility ordinances with uniform regulations in late 2018. *Declaration of Cooley, Exh. P (Ordinance No. 12-1102-18) and Exh. Q (Ordinance No. 15-1214-18).* Ordinance No. 15-1214-18 authorized outdoor commercial shooting facilities in unincorporated Jefferson County. Exh. Q, p. 9. (Ordinance No. 15-1214-18). Plaintiffs never challenged Ordinance No. 15-1214-18, and do not even mention it in their Amended Complaint.

It was only after the Western Washington Growth Management Hearings Board (Growth Board) invalidated Ordinance No. 15-1214-18 on September 16, 2019 (discussed in more detail below), that the Commissioners passed a ***new*** moratorium in Ordinance 11-0923-19 to preserve the status quo. *Declaration of Cooley, Exh. R (Ordinance No. 11-0923-19).* Thus, Plaintiffs had from December 14, 2018 to September 23, 2019 [the date of the new moratorium ordinance] to apply for a permit for an outdoor commercial shooting facility, but failed to do so.

Plaintiffs jump over the 2018 ordinances passed by the Commissioners. They also jump past the decision in September 2019 by the Growth Board to invalidate those 2018 ordinances. Plaintiffs jump from 2017 to 2020 and attack the two ***2020*** ordinances passed by the Commissioners, Ordinance 03-0224-20 and 04-0224-20. Dkt. #17, p. 11. Plaintiffs erroneously claim, "There are ***almost no*** parcels of land available in Jefferson County where it would be possible to construct an indoor shooting range under Ordinance 03-224-20, the zoning ordinance. Therefore, there is no way as a practical matter for Fort Discovery to build a new indoor commercial shooting facility." *Id.* (emphasis added). Before passing the 2020 ordinances the County did a parcel study which demonstrates that on approximately 18 parcels in commercial and industrial zones, indoor commercial shooting facilities could be built. *Declaration of Cooley, Exh. S, Exhibit A, p. 3 (February 7, 2020 Staff Report).* "Three of the parcels are largely undeveloped: (1) Parcel APN 001 212 010; (2) Parcel APN 702 231 015; and, Parcel APN 901 024 008." *Id.*

The Amended Complaint mentions three of four Commissioners only in the

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 3
3:20-cv-05253-RJB

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

introduction to the Amended Complaint. ECF #17, pp. 4-5.  Commissioner Kler is mentioned only once more, as someone who "encouraged" the County sheriff's actions to enforce the law.[1]  Plaintiffs do not allege any individual Commissioner did anything to violate Section 1983, except pass legislation.

### A. Plaintiffs' History of Illegal Outdoor Commercial Gun Ranges and Prior Litigation

Plaintiff Joseph N. D'Amico (D'Amico) owns Plaintiff Fort Discovery Corporation. ECF # 17, p. 4. Plaintiffs claim "Fort Discovery Corporation and its predecessor company operated a commercial gun range and military law enforcement training facility in Jefferson County from the late 1980s to October 31, 2017." *Id.*, p. 6 and *Declaration of Cooley, Exh. D, p. 8. (Fort Discovery's Opening Brief in the Washington Court of Appeals, Division II).*[2] The "predecessor company" is Security Services Northwest, Inc., also owned by D'Amico. *Sec. Servs. Nw., Inc. v. Jefferson Cty.,* 144 Wn. App. 1002 *1 (2008) *(Exh. F to Cooley Declaration)*.  Their commercial gun range operated both day and night, and allowed military and police agencies to shoot there. *Declaration of Cooley, Exh. D, p. 9. (Fort Discovery's Opening Brief in the Washington Court of Appeals, Division II).*  Residents near this shooting range would call 911 to report the shooting. *Id.*, p. 12. (Fort Discovery's Opening Brief in the Washington Court of Appeals, Division II).  "Starting in about 2001, the County received numerous complaints from neighbors regarding gunfire and noise on the property.  Neighbors complained of living in a war zone and repeatedly requested that the County do something about it."  *Sec. Servs. Nw., Inc. v. Jefferson Cty.,* 144 Wn. App. 1002 *2 (2008) *(Exh. F to*

---

[1] ECF #17, p. 8. ("At least one County Commissioner at the time, Ms. Kler, knew as late as January 31, 2017 of Sheriff Stanko's plan and encouraged his actions.")

[2] Defendants admit these facts only for purposes of this Motion for Summary Judgment. The brief of the Fort Discovery Corporation is an opposing party's statement, admissible under FRE 801(d)(2). For example, at a minimum, Fort Discovery's brief is inaccurate because Fort Discovery was not incorporated until June 3, 2010. The case pending in the Washington Court of Appeals also alleges 2nd Amendment violations, and was scheduled for oral argument on May 21, 2020, until the Court of Appeals canceled oral argument due to the COVID-19 pandemic.  Based upon communications from the Court of Appeals, a decision without oral argument is expected.

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 4
3:20-cv-05253-RJB

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Cooley Declaration)*[3]

In 2005, the County learned that D'Amico had constructed several buildings on the property without any permits. *Id.* These included a "bunkhouse", a latrine, and a kitchen. *Id.* In July 2005, the County issued stop work orders on the property. *Id.* "SSNW appealed the stop work orders to the hearing examiner. Despite the orders, SSNW continued its business activities, apparently under the belief that the orders were illegal and unenforceable." *Id.* In October 2005, the Superior Court issued a temporary restraining order and a preliminary injunction against SSNW. *Id.* At the administrative appeal in November 2005:

> [T]he hearing examiner found that SSNW did not begin placing "significant effort into soliciting other organizations, including the Department of Defense, to provide training at the SSNW site" until 2001. CP at 39. The examiner also noted that SSNW's payroll levels increased substantially between 1992 and 2005. Noting the newer non-permitted buildings on the property, where the business activities were taking place, the hearing examiner found that SSNW failed to establish a lawful nonconforming use before January 1992. Furthermore, because SSNW never applied for prescriptive or conditional use permits, the hearing examiner held that those options were no longer available. CP at 52. Concluding that the County's decision to issue the stop work orders was not clearly erroneous, the hearing examiner affirmed the orders. The examiner's decision expressly prohibited all training activities and any use of firearms and weapons on the property.

*Id.* This 2005 hearing examiner decision was appealed under the Land Use Petition Act, Chapter 36.70C RCW (LUPA) to the Kitsap Superior Court and then the Washington Court of Appeals, Division II.

The Washington Court of Appeals concluded in its 2008 opinion that the 2005 hearing examiner decision did not properly consider legal non-conforming uses and remanded the case for that determination. On remand in 2009, the hearing examiner determined, in part, that D'Amico and SSNW did not have a legal non-conforming right to use the range for commercial third-party training, like the police and military uses, and increased noise created

---

[3] D'Amico owns and operates Security Services Northwest, Inc. and Fort Discovery Corporation.

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 5
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
V4

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

by those operations. *Declaration of Cooley, Exh. ZZ (2010 Judge Roof Order)*.   In 2010, Judge Jay B. Roof of the Kitsap Superior Court affirmed the 2009 hearing examiner decision. *Id.*   Judge Roof's Order was appealed to the Washington Court of Appeals, Division II and was affirmed. *Sec. Servs. Nw., Inc. v. Jefferson Cty.*, 156 Wn. App. 1008, *4 (2010) *(Exh. T to Cooley Declaration)*.   The Washington Supreme Court denied review. *Sec. Servs. Nw., Inc. v. Jefferson Cty.*, 170 Wn.2d 1006, 245 P.3d 227 (2010).   The 2010 Court of Appeals opinion also affirmed Judge Roof's separate order dismissing the Section 1983 and Chapter 60.40 RCW claims and awarded the County attorney's fees for filing a frivolous appeal.   156 Wn. App. 1008, *3.

The Plaintiffs' amended complaint admits that despite the 2009 hearing examiner decision that was affirmed by Judge Roof and the Court of Appeals in 2010, that they continued third-party training at their facility through October 31, 2017.

> Fort Discovery's customers for the gun range and training facility included the Jefferson County Sheriff's Office, Kitsap County Sheriff's Office, Clallam County Sheriff's Office, Washington State Patrol, Washington State Parks police, Washington State Fish and Wildlife, Federal Bureau of Investigation, Border Patrol, Customs and Border Protection, the Army, Navy, and Marine Corps.

Dkt. # 17, p. 6.   Repeated complaints about the level of noise at the commercial shooting range continued too.

On September 7, 2017, the lawyer for D'Amico's landlord wrote to the County and D'Amico complaining that D'Amico has not corrected permit violations as required in the 2009 Jefferson County Hearing Examiner decision.   *Declaration of Cooley, Exh. U (September 7, 2017 Setchell Letter to D'Amico and Philip Morley)*.   In that letter, the landlord demands that D'Amico and the County work with the landlord to correct violations by September 15, 2017.   *Id.*   On September 26, 2017, the County responded to the landlord's September 7, 2017 letter and alerted D'Amico, his lawyer (Mr. Overstreet), and the landlord of continued violations of the 2009 hearing examiner decision on remand, as affirmed by the Court of Appeals in 2010.   *Declaration of Cooley, Exh. V (September 26, 2017 JC letter to*

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 6
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
V4

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Setchell and Overstreet).*   On September 15, 2017, the landlord terminated D'Amico's tenancy at the property.  *Id. Declaration of Cooley, Exh. W (September 15, 2017 Setchell letter to D'Amico).*   D'Amico subsequently bought new property in Jefferson County near Tarboo Lake.  *Declaration of Cooley, Exh. J (D'Amico v. TRC Complaint),* pp. 1-2.

D'Amico has since sued the family that owned his old property *(Declaration of Cooley, Exh. I, D'Amico v. Property Managers),* his neighbors at his new property *(Id., Declaration of Cooley, Exh. J,  D'Amico v. TRC),* and even Facebook *(Id., Declaration of Cooley, Exh. K, D'Amico v Facebook)*[4]

**B.    Complaints about the Commercial Shooting Facility on Property Licensed from the County**

Jefferson County owns property on which an outdoor shooting facility exists that is open to the public and is operated by the Jefferson County Sportsmen's Association (JCSA). *Declaration of Cooley, Exh. X, p. 2. (Ordinance No. 03-0224-20).*   A true and accurate diagram of the JCSA facility is at http://jeffersoncountysportsmen.org/wp/:



[4] Th... son Co... *to interrogatories).*
LEGISLATORS BROTHERTON, DEAN, KLER, AND SULLIVAN'S MOTION FOR SUMMARY JUDGMENT - 7
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT V4

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1

2

3    *Declaration of Cooley, Exh. Y.*  The JCSA shooting facility has operated on County land

4    under a license from the County for over 50 years.

5         On December 4, 2017, the Commissioners received public comments about noise

6    generated at the JCSA shooting facility during their regular open public meetings. *Id.,*

7    *Declaration of Cooley, Exhibit Z.*  The December 4, 2017 entry about  JCSA states:  "Two

8    individuals commented on the Jefferson County Sportsman's Association (JCSA) Gun Range

9    and their activities." *Id.*

10        **C.    The 2017 One-Year Moratorium Ordinance**

11        On December 18, 2017 the Commissioners passed Ordinance No. 05-1218-17 entitled

12   "An Ordinance Establishing a Moratorium on Commercial Shooting Facilities in

13   Unincorporated Areas of Jefferson County."  *Declaration of Cooley, Exh. O (Ordinance No.*

14   *05-1218-17).*  The moratorium was authorized by RCW 36.70.795, RCW 36.70A.390 and

15   Article 11, § 11 of the Washington State Constitution, for up to one year.  *Declaration of*

16   *Cooley, Exh. O, p. 2. .*In the recitals to that ordinance, the Commissioners identified broad-

17   based concerns that were motivating factors for the 2017 one-year moratorium ordinance,

18   including limited land availability, safety, environmental protection and the recent success of

19   Kitsap County in litigation after challenges to its shooting range ordinance.[5] The recitals

20   made clear the Commissioners would require uniform requirements for all commercial

21   shooting facilities in unincorporated Jefferson County:

22

23        **WHEREAS,** the BoCC finds that ***uniform requirements*** for the establishment
          and operation ***of all commercial shooting facilities in unincorporated Jefferson***
24        ***County*** would provide assurance of the safe conduct of recreational and
          educational shooting activities in Jefferson County, provided the regulation: (1)

25

26   ---

     [5] The ordinance indicated that the recitals were the Commissioners findings of fact in support of the ordinance.
27   LEGISLATORS BROTHERTON, DEAN, KLER, AND
     SULLIVAN'S MOTION FOR SUMMARY
     JUDGMENT - 8
     3:20-cv-05253-RJB

     **KEATING, BUCKLIN & McCORMACK, INC., P.S.**
     ATTORNEYS AT LAW
     801 SECOND AVENUE, SUITE 1210
     SEATTLE, WASHINGTON 98104
     PHONE: (206) 623-8861
     FAX: (206) 223-9423

> provides for and promotes safety by establishing a permitting procedure and rules for the siting, design and operation of commercial shooting range facilities that safeguards participants, spectators, neighboring properties and the public; (2) does not prohibit or expressly regulate the discharge of firearms; (3) involves measures designed to make the discharge of firearms safe; (4) protects the environment; (5) ensures compatibility with neighboring land use; and, (6) promotes the continued availability of shooting facilities for firearm education, practice in the safe use of firearms, and recreational firearm sports; and,

*Id.* (emphasis added).  Thus, the moratorium applied to *all* commercial shooting facilities in Jefferson County, including JCSA, which was located on County land. Further, the moratorium ordinance made clear that the new commercial shooting facility regulations were to be "for *existing and new* commercial shooting facilities within unincorporated Jefferson County." *Declaration of Cooley, Exh. O, p. 4*, (emphasis added).

### D.    A Review Committee is Formed with Plaintiff D'Amico as a Member

The moratorium ordinance created a review committee to assist the County with development of draft commercial shooting facility regulations. *Id.* Its membership would include a designee of Director of Community Development, the Director of Department of Environmental Health, a designee from the Sheriff's office, community members, a tribal representative and a designee from "each current commercial shooting range" in the County. *Id.* The commercial shooting range designee was John Minor, representing JCSA. D'Amico, the plaintiff in this lawsuit, was appointed as an at large member. *Declaration of Cooley, Exh. A, p. 6 (August 23, 2018 Staff Report).*

The moratorium ordinance set a deadline for the Review Committee report at August 23, 2018. *Id.* p. 7. The Review Committee met fifteen times, usually for 3 or more hours, in the Commissioners' Chambers. All the meetings of the Review Committee were recorded on the County's camera system. *Id.* p. 17.   The Review Committee ultimately

LEGISLATORS BROTHERTON, DEAN, KLER, AND SULLIVAN'S MOTION FOR SUMMARY JUDGMENT - 9
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT V4

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

produced a 27-page Staff Report dated August 23, 2018. *Declaration of Cooley, Exh. A (August 23, 2018 Staff Report).* Part of that Staff Report detailed the existing regulatory framework. *Id.*, pp. 7-13.  It noted that the Washington Constitution, Article XI, Section 11, confers upon county legislative authorities the police power to adopt regulations necessary to protect the health, safety, and well-being of its residents. *Id.*, p. 7 (August 23, 2018 Staff Report).

The August 23, 2018 Staff Report discussed regulation of shooting in Washington. *Id.*, pp. 7-8. Under RCW 9.41.290 the State of Washington fully occupies and preempts the entire field of firearms regulations within its boundaries. Counties only may enact ordinances as expressly authorized by RCW 9.41.300. *Id.*, p. 7.  That code states that  a county may, by ordinance, restrict the discharge of firearms in any portion of its jurisdiction where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized so long as such ordinance shall not abridge the right of the individual guaranteed by Article I, section 24 of the Washington Constitution to bear arms in defense of self or others. *Id.* p. 7.[6]

The August 23, 2018 Staff Report looked at work done at nearby Kitsap County, which had recently successfully defended its shooting range ordinance, as reflected in a 2017 published Court of Appeals, Division II case, *Kitsap Cty. v. Kitsap Rifle & Revolver Club*, 1 Wn. App.2d 930, 405 P.3d 1026 (Wash. Ct. App. 2017), *review denied*, 190 Wn.2d 1015, 415 P.3d 1198 (2018). *Id.*, p. 8.

---

[6] In addition,  RCW 36.32.120(7) provides that the county legislative authorities shall make and enforce, by appropriate resolutions or ordinances, all such police and sanitary regulations as are not in conflict with state law. *Id.*, p. 7.

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 10
3:20-cv-05253-RJB

1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
V4

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

### E.   The County Commissioners Pass Operating Permit and Zoning Ordinances

After public notice, public comment and an open public hearing, the Commissioners adopted Ordinance No. 12-1102-18 on November 2, 2018, which was to be part of the Health and Safety Code, Title 8 of the Jefferson County Code (JCC). Ordinance No. 12-1102-18 requires an operating permit for ***all existing and new*** commercial shooting facilities. *Declaration of Cooley, Exh. P, p. 7 (Ordinance No. 12-1102-18).*

On December 14, 2018, the Commissioners passed Ordinance No. 15-1214-18, after complying with the County's public participation program and after notice, public comment and an open public hearing.  *Declaration of Cooley, Exh. BB (Ordinance No. 15-1214-18).*  Ordinance No. 15-1214-18 was a development regulation that modified the zoning in the County's Unified Development Code, Title 18 JCC.  Ordinance No. 15-1214-18 authorized new outdoor commercial shooting facilities, subject to existing land use requirements.  *Id.*, 4.

### F.   Plaintiff Fort Discovery and its Neighbors Appeal the 2018 Ordinances

Two suits followed the adoption of the 2018 ordinances. One suit was in Clallam County Superior Court filed by Plaintiff Fort Discovery in this case, seeking to invalidate Ordinance No. 12-1102-18 (the Title 8 operating permit ordinance).  *Declaration of Cooley, Exh. CC (Fort Discovery  Opening Brief in the Court of Appeals).*  The other suit was filed in the Western Washington Growth Management Hearings Board (Growth Board) by a neighborhood group, the Tarboo Ridge Coalition, and sought to invalidate ***both*** Ordinance No. 12-1102-18 (the Title 8 operating permit ordinance) and Ordinance No. 15-1214-18 (the Title 18 ordinance authorizing outdoor commercial shooting facilities).  *Id.  Declaration of Cooley, Exh. DD.*

Plaintiff Fort Discovery's Clallam County Superior Court case alleged that Ordinance No. 12-1102-18 (the Title 8 operating permit ordinance), violated RCW 9.41.290 (the state

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

preemption related to local laws on the discharge of firearms), Wash. Const. art. I, § 24, (the state constitutional guarantee of the right to bear arms) and the 2nd Amendment. *Declaration of Cooley, Exh. CC (Appellants Brief, p. 1-5)*. On cross-motions for summary judgment, the superior court granted summary judgment for Jefferson County ruling that Ordinance No. 12-1102-18 (the Title 8 operating permit ordinance) was legal and valid. *Id.*, p. 21. Plaintiff Fort Discovery appealed. *Id.* The Court of Appeals, Division II had scheduled oral argument for May 21, 2020, but that has been cancelled due to the COVID-19 pandemic.

In Tarboo Ridge Coalition's Growth Board case, the County did not prevail. On September 16, 2019 the Growth Board invalidated in its Final Decision and Order (FDO) ***both*** Ordinance No. 12-1102-18 (the Title 8 operating permit ordinance) and Ordinance No. 14-1209-18 (the Title 18 ordinance authorizing outdoor commercial shooting facilities). *Declaration of Cooley, Exh. DD , p. 18 (September 16, 2019 Final Decision and Order).*[7] The Growth Board determined that both ordinances violated the Growth Management Act and were invalid. *Id.*

The Growth Board found as a fact in the FDO that: "The new shooting facility regulations create a new land use category, 'outdoor shooting facilities', and allow two types of shooting facilities: commercial shooting facilities (allow police and military unit training and which may include 'one or more shooting ranges) and non-commercial facilities for use by property owners or guests.'" *Exh. DD , p. 17.* In the FDO, the Growth Board held in pertinent part:

> [T]he County conducted no SEPA analysis of the Title 8 Ordinance and issued a Declaration of Non-Significance for the Title 18 Ordinance, ***notwithstanding the fact that the two Ordinances working together authorized the permitting of shooting facilities of significantly greater scale and intensity than what was previously allowed throughout the County's Forest-Commercial, Rural and Inholding Resource Lands***.

---

[7] Until the point that the Growth Board invalidated the Title 8 ordinance, outdoor commercial shooting ranges were a permitted activity in unincorporated Jefferson County. But the Plaintiffs did not apply for a permit prior to the new moratorium.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Exh. DD, p. 15* (emphasis added). And:

> The Board finds that the County's amendments of Titles 8 and 18 are inextricably intertwined. ***The end result of the County's actions in adopting amendments to both titles will allow larger shooting facilities with more uses in natural resource lands than previously allowed in its development regulations***.

*Exh. DD, p. 16* (emphasis added). The Growth Board remanded both ordinances to the Commissioners with a compliance report due by not later than March 2, 2020. *Exh. DD*, p. 19. The Growth Board set a compliance schedule, including a compliance hearing set for April 9, 2020. *Id.*

### G.   The County's Response to the Growth Board's Final Decision and Order

On September 23, 2019, the Commissioners passed another moratorium ordinance to allow the County to comply with the Growth Board's FDO and preserve the status quo for six months, until March 23, 2020. *Declaration of Cooley, Exh. R (Ordinance No. 11-0923-19).* In addition, on the same day, the Commissioners referred both ordinances to the Jefferson County Planning Commission. *Declaration of Cooley, Exh. S (February 7, 2020 Staff Report); Exhibit GG (Letter to Planning Commission).*

The moratorium from Ordinance No. 11-0923-19 ended after 60 days because the County failed to hold a hearing on time. However, on December 9, 2019, the Commissioners passed a new moratorium in Ordinance 14-1209-19 to continue to preserve the status quo for the same length of time as in Ordinance No. 11-0923-19, namely through March 23, 2020. *Declaration of Cooley, Exh. EE (Ordinance 14-1209-19).* On February 24, 2020, the Commissioners passed another new moratorium in Ordinance 02-0224-20 because final compliance with the Growth Board's FDO could not be completed until after March 23, 2020. *Declaration of Cooley, Exh. FF, p.2 (Ordinance 02-0224-20).* Ordinance 02-0224-20 states, "Unless subsequently extended by the BoCC pursuant to state law, the moratorium adopted by this Ordinance which ends on March 23, 2020 shall continue for an additional six months

LEGISLATORS BROTHERTON, DEAN, KLER, AND SULLIVAN'S MOTION FOR SUMMARY JUDGMENT - 13
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT V4

**KEATING, BUCKLIN & MCCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1    (until September 23, 2020) or until compliance with the Washington State Growth

2    Management Hearings Board's Final Decision and Order in Case No. 19-2-0003c is

3    achieved, whichever is earlier." *Id.*

4         Meanwhile, the Jefferson County Planning Commission took up the replacement

5    ordinances. After notice, public comment and a hearing, the Jefferson County Planning

6    Commission on December 3, 2019, recommended to the Commissioners two new ordinances

7    to replace Ordinance No. 12-1102-18 (the Title 8 operating permit ordinance) and Ordinance

8    No. 15-1214-18 (the Title 18 ordinance, authorizing outdoor commercial shooting facilities)

9    that had been invalidated by the Growth Board's FDO. *Declaration of Cooley, Exh. S, p. 1*

10   *(February 7, 2020 Staff Report).*  In proposing a replacement for Ordinance No. 15-1214-18

11   (the Title 18 ordinance, authorizing outdoor commercial shooting facilities), the Planning

12   Commission recommended that the replacement ordinance prohibit new outdoor commercial

13   shooting facilities and allow indoor commercial shooting facilities only in commercial and

14   industrial zoning. *Id.*, p. 31.  The Planning Commission also recommended that the definition

15   of "Indoor shooting facility" include lawful incidental sales of firearms, ammunition,

16   component parts, and accessories." *Id.*, p. 40.

17        Then, the Commissioners took up the Planning Commission's two proposed

18   ordinances, the ones referenced in the First Amended Complaint. ECF # 17, p. 11.  After

19   notice, public comment and a hearing, the Commissioners adopted Ordinance 03-0224-20,

20   the replacement for Ordinance No. 15-1214-18 (the Title 18 ordinance, authorizing outdoor

21   commercial shooting facilities) on February 24, 2020. *Declaration of Cooley, Exh. X*

22   *(Ordinance 03-0224-20).*  The Commissioners modified the ordinance proposed by the

23   Planning Commission, but accepted the Planning Commission's recommendation that

24   prohibited new outdoor commercial shooting facilities and allowed indoor commercial

25   shooting facilities only commercial and industrial zoning. *Id.*, p. 24.  The Commissioners

26   also accepted the Planning Commission's recommendation that "Lawful incidental sales of

27

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 14
3:20-cv-05253-RJB

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1  firearms, ammunition, component parts and accessories for indoor shooting facilities shall be

2  allowed." *Id.*, pp. 24-26.

3         Ordinance 03-0224-20 listed broad-based concerns in its recitals, including limited

4  land availability, safety, environmental protection. *Id.*, pp. 1-6. In addition, Ordinance 03-

5  0224-20 demonstrates that it has been modified to address the requirements of the Growth

6  Management Act, as reflected in the September 16, 2019 Growth Board's FDO. *Id.*, p. 6.

7  Finally, Ordinance 03-0224-20 provided express reasons of why indoor commercial shooting

8  facilities are more protective of safety and the environment, including:

9         **WHEREAS,** without best management practices such as those suggested by
       the United States Environmental Protection Agency Region 2 in its 2005
10        publication entitled Best Management Practices for Outdoor Shooting
       Ranges (USEPA 2005), lead and other heavy metals released at shooting
11        ranges could negatively impact human health and the environment; and,

12        **WHEREAS,** lead is a heavy metal hazardous waste that can travel through
       soils, ground and surface waters, and persist in the environment,
13        bioaccumulating up the food chain; and,

14        **WHEREAS,** lead is a known health hazard and neurotoxin that can affect
       humans and animals alike; and,
15

       **WHEREAS,** noise above certain levels, particularly persistent, repetitive,
16        percussive is deleterious to humans and animals alike; and,

17        **WHEREAS**, noise at outdoor shooting facilities is much more likely to
       generate complaints by nearby residents, than noise at indoor shooting
18        facilities; and,

19        **WHEREAS,** greater technology exists to control noise impacts at indoor
       shooting ranges than at outdoor commercial shooting facilities, where noise
20        leaving commercial outdoor commercial shooting facilities can reach and
       negatively impact humans, domestic and wild animals unless the outdoor
21        shooting range's noise is mitigated through best management practices and
       the outdoor shooing range is properly operated; and,
22

       **WHEREAS,** properly maintained state of the art HVAC keep air clean for
23        clients and workers; and,

24 *Id.*, p. 5.

25        Ordinance 03-0224-20 also discusses the parcel analysis performed by the County

26 demonstrating that commercial shooting facilities can be sited in Jefferson County under the

27 LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 15
3:20-cv-05253-RJB

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

zoning it authorizes:

> **WHEREAS**, Jefferson County staff has performed an analysis and determined that indoor commercial shooting facilities actually could be sited, assuming compliance with existing provisions in Title 18 JCC and the Planning Commission Recommendation that commercial indoor shooting facilities be allowed only as a discretionary use in all commercial and industrial zoning districts (except resource based industrial zoning district), subject to review under the State Environmental Policy Act that is presented in a Technical Memorandum attached as Exhibit A to a February 7, 2020 staff report that demonstrates that under the zoning scheme adopted in this Ordinance;

*Id.*, p. 2.

To replace Ordinance No. 12-1102-18 (the Title 8 operating permit ordinance), the Commissioners modified the Planning Commission's proposed ordinance on February 24, 2020, and adopted Ordinance 04-0224-2. *Cooley Declaration, Exh. II, p. 24 (Ordinance 04-0224-20)*.

On March 5, 2020, the County moved the Growth Board for an expedited compliance hearing, seeking to rescind the FDO's determination of invalidity. *Declaration of Cooley, Exh. HH, p. 1 (April 3, 2020 Order on Compliance)*. The motion was granted and on March 20, 2020, the Growth Board held a compliance hearing. *Id.*, p. 2. On April 3, 2020, the Growth Board issued its Order on Compliance, which determined that Ordinance 03-0224-2 and Ordinance 04-0224-2 are compliant with the Growth Management Act, and rescinded the order of invalidity in the FDO. *Id.*, p. 3.

## II. THE COUNTY COMMISSIONERS SUED HERE WERE ENGAGED IN CORE LEGISLATIVE ACTIVITY AND ARE ENTITLED TO IMMUNITY.

### A. Local Legislators Are Immune for Passing Moratoriums and New Zoning.

Local government officials are entitled to legislative immunity for their legislative actions, whether those officials are members of the legislative or the executive branch. *Bogan v. Scott–Harris*, 523 U.S. 44, 54–55, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). This immunity extends both to claims for damages and claims for injunctive relief. *Supreme Ct. of Va. v.*

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732–33, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).  "The legislative immunity doctrine also creates an evidentiary and testimonial privilege." *Young v. City & Cty. of Honolulu*, CIV. 07-00068 JMSLEK, 2007 WL 2972607, at *1 (D. Haw. Oct. 9, 2007).

The immunity serves many public policy objectives.  They include the risk that lawsuits would deter citizens from entering public life.  Lawsuits could be used to intimidate and subvert political will.  Ultimately, legislators should answer to their voting constituents, not to a judge or jury, in a democratic institution.  *Bogan v. Scott-Harris*, 523 U.S. 44, 52, 118 S. Ct. 966, 971, 140 L. Ed. 2d 79 (1998).  Legislative immunity generally applies to zoning ordinances.  *Bryan v. City of Madison, Miss*., 213 F.3d 267, 273–74 (5th Cir. 2000) ("Zoning is general and prospective. It directly affects the entire community.")  In Washington, moratoriums on building are legislative acts. *In re Ackerson*, 143 Wn.2d 366, 375, 20 P.3d 930, 935 (2001).  The ordinances at issue in this case are legislative acts and the Commissioners have legislative immunity for the reasons discussed more fully below.

**B.**     **The Ordinances At Issue Meet the Four-Part Test for Absolute Immunity.**

Federal courts use four factors in determining whether an act is legislative in its character and effect: "(1) whether the act involves ad hoc decision making, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 960 (9th Cir. 2010).

1.     Factors 3 and 4 Are Satisfied.

Here, there should be no question that the County's actions satisfy the third and fourth factors of the test.  The all of the challenged ordinances were passed by the Commissioners after notice, public comment and an open public hearing. That is all that is needed.  The fighting issues are usually only on factors 1 and 2.

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 17
3:20-cv-05253-RJB

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

2.    Factors 1 and 2 Are Satisfied Too.

While D'Amico claims he was singled out by this legislation and likely would claim the ordinances were "ad hoc," no fair reading of the ordinances would bear that out. Starting with Ordinance 05-1218-17 in December 2017, the purpose of the commercial shooting regulations to develop "***uniform requirements*** for the establishment and operation of all commercial shooting facilities in unincorporated Jefferson County. *Declaration of Cooley, Exh. O, p. 2* (emphasis added) (Ordinance No. 05-1218-17).   Ordinance 03-0224-2 listed broad-based concerns in its recitals, including limited land availability, safety, environmental protection. *Declaration of Cooley, Exh. X, pp. 1-6 (Ordinance 03-0224-20).*   In addition, Ordinance 03-0224-20 demonstrates that it has been modified to address the requirements of the Growth Management Act, as reflected in the September 16, 2019 Growth Board's FDO. *Id.*, p. 6.  Finally, Ordinance 03-0224-20 provided express reasons of why indoor commercial shooting facilities are more protective of safety and the environment. *Id.*, p. 5.  Broad-based concerns also underlie the passage of Ordinance 04-0224-20. *Declaration of Cooley, Exh. II, pp. 1-6 (Ordinance 04-0224-20).* "Even if zoning ordinances affect some owners and entities more significantly than others, they are legislative acts for which members of local legislative bodies have immunity." *Thunderbird Hotels, LLC v. City of Portland,* 670 F. Supp. 2d 1164, 1177 (D. Or. 2009), aff'd, 404 Fed. Appx. 249 (9th Cir. 2010).  *Id.* at 1177.

The ordinances at issue are not "ad hoc" and do not apply to only "a few individuals." Compare *Kaahumanu v. Cty. of Maui*, 315 F.3d 1215, 1217 (9th Cir. 2003).  *Kaahumanu* is a case which the Ninth Circuit ruled was "ad hoc" and no immunity applied.  In that case, Plaintiff ran a commercial wedding business out of her beach front home. 315 F.3d at 1217. In 1998 she applied for a Conditional Use Permit (CUP) permitting her to operate commercial weddings out of her private residence.  The property was zoned residential/apartment and commercial uses were not permitted.  *Id.* fn. 2.  A CUP seeks a variance from the existing zoning. CUPs on Maui are first reviewed by the Maui Planning Commission.  The Planning

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 18
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
V4

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX:  (206) 223-9423

Commission's role is to recommend approval of the CUP as an ordinance passed by the City Council. The City Council must, by ordinance, approve or deny the CUP.

The Maui Planning Commission recommended approval of the CUP. The Maui City Council voted to deny it. Like Plaintiffs here, Plaintiff in *Kaahumanu*, sued the Maui Council Members for damages under Section 1983.

The Plaintiff argued that CUP "decisions are made on a case-by-case basis, and that as a practical matter, the consequences of each individual permit do not alter the underlying legislative policy…. The decision was taken based on the circumstances of the particular case and did not effectuate policy or create a binding rule of conduct. Typically, a zoning ordinance establishes a rule of general application, but here the ordinance would have affected only a single permit and a single parcel of land." *Kaahumanu*, 315 F.3d at 1220. The Ninth Circuit ruled that any wedding business would have to seek a CUP, which would necessarily look at the individual circumstances of each application. Unlike the present case, "[e]nactment of the ordinance would not have created a new category of expressly permitted or special uses and therefore did not modify or supersede the policies contained in the existing comprehensive zoning ordinance." *Id.* Accordingly, the Maui Council members were not entitled to immunity.

The Ninth Circuit in *Kaahumanu* also ruled that the CUP legislation did not affect the public at large and also failed element 2 of the test. "A decision to enact or reject an ordinance granting a CUP is made on a case-by-case basis and does not apply to the public at large in Maui County. It is therefore distinguishable from the enactment of a comprehensive zoning ordinance. We do not hold, however, that anything short of a comprehensive zoning ordinance is administrative rather than legislative. The question here is one of degree, and we conclude simply that the very limited impact of the conditional use permit at issue here weighs against absolute immunity." 315 F.3d at 1222.

This case is more like *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 962

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 19
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
V4

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

(9th Cir. 2010) and *Thunderbird Hotels, LLC v. City of Portland,* 670 F. Supp. 2d 1164, 1171

(D. Or. 2009), aff'd, 404 Fed. Appx. 249 (9th Cir. 2010).  In *Thunderbird Hotels,* the plaintiff

wanted to re-develop property on Hayden Island, at the north edge of Portland. The Portland

City Council first passed a six-month moratorium on most commercial development on

Hayden Island. 670 F. Supp. 2d at 1172.  The plaintiff sued and alleged:

> [T]hat the moratorium was intended "to prevent a redevelopment of the hotel
> site that was lawful and permitted by its CG zoning." Plaintiff further alleges
> that defendants adopted the moratorium "for an unlawful reason, namely
> defendant [City Council Member] Adams' belief that plaintiff's intended
> purchaser, Wal–Mart, "fails the basic test of ethical capitalism" and that
> redevelopment of the hotel site should be delayed or denied until Wal–Mart
> "matured into a responsible corporate citizen." It also alleges that defendants
> "intended the extensions of the moratorium to prevent any retail
> redevelopment of the hotel site at any time ... even though such redevelopment
> would be lawful and permitted by the CG zoning of the property." Plaintiff
> alleges that defendants' adoption and extension of the development
> moratorium have deprived it of its right to due process secured under the
> Fourteenth Amendment to the United States Constitution.

*Thunderbird Hotels, LLC v. City of Portland*, 670 F. Supp. 2d 1164, 1174 (D. Or. 2009),

*aff'd*, 404 Fed. Appx. 249 (9th Cir. 2010).

The district court acknowledged that zoning which singles out an individual who is

treated differently than others is administrative not legislative.  *Id.* at 1176.  Similarly,

ordinances which affect a single parcel are not legislative.  *Id.*  There, the moratorium applied

to all commercial development on Hayden Island therefore it did not single out an individual

or parcel. "Even if zoning ordinances affect some owners and entities more significantly than

others, they are legislative acts for which members of local legislative bodies have

immunity."  *Id.* at 1177.

Another example applying legislative immunity is *Cmty. House, Inc. v. City of Boise,
Idaho*, 623 F.3d 945, 962 (9th Cir. 2010).  That case dealt with Boise's attempt to address

homelessness in Boise. One approach was to purchase property to serve as a shelter.  Another

approach was to contract with religious organizations to provide shelter space.  The Boise

City Council voted to sell a homeless shelter it owned and operated, to a third party.  It passed

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 20
3:20-cv-05253-RJB
1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
V4

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1   ordinances to achieve this result.  The prior operator of the Boise-owned shelter sued the

2   individual council members for civil rights violations.

3          Like the other cases, "[t]he third and fourth factors are easily satisfied in this case."

4   *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 960 (9th Cir. 2010).  The district

5   court said that since the ordinance dealt with one piece of property and one vendor, it did not

6   affect the public at large and violated element two.  But the Ninth Circuit disagreed, "With

7   respect, that conclusion was manifestly erroneous.  First, the lease and sale actually had an

8   impact on a larger group of people—Boise's homeless community.  An act need not affect a

9   city's entire population in order to be considered legislative.  It is sufficient that the act affects

10  a discrete group of people or places." *Id.*

11         The plaintiff in the *Boise* case also claimed the decision was "ad hoc" and did not

12  address citywide policies.  The Ninth Circuit rejected this, holding that, despite the ordinance

13  affecting one contract and one parcel, it dealt with a citywide policy to provide homeless

14  shelter space.  "Finally, the individuals involved in the decision of what to do with

15  Community House had to weigh important social demands inherent in the City's policy of

16  helping the homeless against significant individual rights.  Legislators involved in such

17  balancing are generally entitled to absolute legislative immunity."  *Id.* at 962.

18         Accordingly, all four factors are satisfied and the Commissioners are entitled to

19  legislative immunity.

20                                    **IV. CONCLUSION**

21         The Court should grant this partial motion for summary judgment and dismiss the

22  legislators with prejudice.  The actions of passing the ordinances are core legislative activities

23  for which there is absolute immunity.

24

25

26

27  LEGISLATORS BROTHERTON, DEAN, KLER, AND
    SULLIVAN'S MOTION FOR SUMMARY
    JUDGMENT - 21
    3:20-cv-05253-RJB

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

DATED:  June 4, 2020.

1

2                                          KEATING, BUCKLIN & McCORMACK, INC., P.S.

3

4                                          By:  */s/ Andrew Cooley*
                                           Andrew Cooley, WSBA #15189

5

6                                          801 Second Avenue, Suite 1210
                                           Seattle, WA  98104

7                                          Phone: (206) 623-8861
                                           Fax:    (206) 223-9423

8                                          Email: acooley@kbmlawyers.com

9                                          JEFFERSON COUNTY PROSECUTING
                                           ATTORNEY'S OFFICE

10

11                                         Philip C. Hunsucker, Chief Civil Deputy Prosecuting
                                           Attorney, WSBA # 48692

12

13                                         P.O. Box1220
                                           Port Townsend, WA 98368

14                                         Phone: (360) 385-9219
                                           Fax:    (206) 223-9423

15                                         Email: phunsucker@co.jefferson.wa.us

16

17

18

19

20

21

22

23

24

25

26

27   LEGISLATORS BROTHERTON, DEAN, KLER, AND
     SULLIVAN'S MOTION FOR SUMMARY
     JUDGMENT - 22
     3:20-cv-05253-RJB
     1329-00014/2020 06 04 Motion for Summary Judgment (D'Amico) - DRAFT
     V4

                                    KEATING, BUCKLIN & McCORMACK, INC., P.S.
                                                ATTORNEYS AT LAW
                                           801 SECOND AVENUE, SUITE 1210
                                            SEATTLE, WASHINGTON 98104
                                              PHONE:  (206) 623-8861
                                              FAX:  (206) 223-9423

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**

Charles Maduell, WSBA No. 15491
*Law Office of Charles Maduell, PLLC*
1400 112th Ave. SE, Ste. 100
Bellevue, WA  98004-6901
Telephone: (206) 240-194
Email:  chuck@charlesmaduell.com

**Attorneys for Plaintiffs**

Wright Noel, WSBA No. 25264
Stacey Goodwin, WSBA No. 39287
*Carson & Noel, PLLC*
20 Sixth Avenue N.E.
Issaquah, WA 98027
Telephone: (425) 395-7786
Email:  wright@carsonnoel.com

**Attorneys for Plaintiffs**

Greg Overstreet, WSBA No. 26682
*Attorney at Law*
250 Center Park Way
Sequim, WA 98382
Telephone: (800) 859-3463
Email:  greg@ssnwhq.com

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 23
3:20-cv-05253-RJB

**KEATING, BUCKLIN & McCORMACK, INC., P.S.**
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

DATED:  June 4, 2020

1

2

3          /s/ Cindy Marlatte
           Cindy Marlatte, Legal Assistant
4          801 Second Avenue, Suite 1210
           Seattle, WA  98104
5          Phone: (206) 623-8861
           Fax:     (206) 223-9423
6          Email: cmarlatte@kbmlawyers.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

LEGISLATORS BROTHERTON, DEAN, KLER, AND
SULLIVAN'S MOTION FOR SUMMARY
JUDGMENT - 24
3:20-cv-05253-RJB

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423